IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL INDICTMENT** |
| v. | NO. 1:10-CR-103-2-CAP-GGB |
| **DARIO RODRIGUEZ-GOMEZ,** | |
| **Defendant.** | |

**FINAL REPORT AND RECOMMENDATION**

Defendant Dario Rodriguez-Gomez ("Defendant") is charged with conspiring to engage illegally in the business of dealing in firearms and with being an illegal alien in possession of a firearm. Pending before this court is Defendant's Motion to Suppress Evidence from Search of Cellular Telephone [Doc. 45].[1] An evidentiary hearing on this motion was held before me on May 7, 2010. All transcript references ["Tr."] are to the transcript of that hearing. For the reasons discussed below, I **RECOMMEND** that Defendant's motion [Doc. 45] be **DENIED**.

---

[1] Defendant also filed a Preliminary Motion to Suppress Title III Recorded Phone Conversations [Doc. 44] which Defendant withdrew at the conclusion of the evidentiary hearing. [Tr. 40]. That motion [Doc. 44] is deemed **WITHDRAWN**.

AO 72A
(Rev.8/82)

## I. **FACTS**

On January 31, 2010, Officer William Manning, a deputy sheriff with the DeKalb County Sheriff's Office, was assisting Drug Enforcement Administration ("DEA") agents and task force officers in obtaining and executing a search warrant for firearms at a residence in DeKalb County, Georgia. When the officers entered the residence, co-defendant Daniel Bernal-Perez was the only person inside. [Tr. 7-8]. Officers found four rifles during the search. Bernal-Perez told the officers that the rifles belonged to Defendant, who lived in a room in the back of the house. [Tr. 8-9].

Defendant later arrived at the residence in a taxi. The officers outside the residence stopped Defendant, and Officer Manning left the house to speak to him. After Officer Manning confirmed Defendant's identity, he arrested him and took possession of all items on Defendant's person, including a cell phone that was clipped to Defendant's belt. Officer Manning placed these items in an evidence bag, and then put Defendant and the evidence bag in Officer Manning's vehicle. [Tr. 9-10].

Officer Manning advised Defendant of his Miranda rights in Spanish,[2] after which Defendant indicated that he wished to speak to Officer Manning. Defendant and Officer Manning talked while en route to the DeKalb County jail. [Tr. 10-11]. During

---

[2] Officer Manning is fluent in Spanish, but is not a native Spanish speaker.

their conversation, Defendant asked Officer Manning if Defendant could retrieve a phone number from his cell phone. Officer Manning responded that he could not give him the phone, but that he (Manning) could retrieve the number for Defendant from the phone. Defendant said that was fine. [Tr. 11-12].

When Officer Manning and Defendant arrived at the jail, Defendant provided the name of the contact, and Officer Manning began to look through Defendant's cell phone for the number that Defendant wanted. Because the cell phone was programmed for the Spanish language, Officer Manning attempted to change the language from Spanish to English. He did this because he was unfamiliar with some technical terms in Spanish that are used in cell phones, and also to make it easier for non-Spanish-speaking officers who might be examining the cell phone later. [Tr. 13, 24].

While Officer Manning was looking for the requested number and attempting to change the language setting, he came across two photographs on the cell phone. [Tr. 13]. It is not clear from Manning's testimony where in the phone the photographs were located. The photographs may have been on the background or screensaver of the phone, or Officer Manning saw the photographs when he was clicking on different icons looking for the "change language" setting. [Tr. 25]. One photograph was of a rifle. Another photograph showed multiple rifles similar to the ones found in the

3

residence. Officer Manning showed Defendant the two photographs. Defendant said nothing in response. [Tr. 13-14, 25, 29]. Thereafter, Officer Manning was able to locate and access the "contacts" page of the cell phone, and the officer wrote down the number on a piece of paper and gave Defendant the number he had requested. [Tr. 14].

After Officer Manning turned Defendant over to the DeKalb County jail, he took the cell phone to his office and manually documented the cell phone's contents, including the contacts list, the cell phone's number, and the photographs. Officer Manning documented the information on the cell phone in order to preserve the information in case someone tried to lock the phone or delete or erase its contents from a remote location. [Tr. 18-19]. DEA policy required officers to document a cell phone's contents as soon as possible after an arrest. [Tr. 15-16, 18]. Officer Manning did not obtain a search warrant before he searched the phone.

Defendant moves to suppress evidence of the photographs and any other information that was on his cell phone. [Doc. 45; Doc. 66 at 15].

## II. DISCUSSION

**A.  Defendant's cell phone was properly searched as a search incident to his arrest**

The government and Defendant disagree on whether Defendant's cell phone could be lawfully searched incident to Defendant's arrest. Defendant does not contend that his arrest was unlawful. It is well settled that a person lawfully arrested may be searched without a warrant. United States v. Robinson, 414 U.S. 218, 235 (1973). In a search incident to an arrest, the police are not limited to a search for weapons, but may, without any additional justification, look on an arrestee's person for evidence of criminal activity in order to preserve it for use at trial. See id. at 233-34. The permissible scope of a search incident to a lawful arrest extends to containers found on the arrestee's person. United States v. Johnson, 846 F.2d 279, 282 (5th Cir. 1988)(per curiam).

Defendant cites United States v. Park, No. CR 05-375 SI, 2007 WL 1521573 (N.D. Cal. May 23, 2007), to support his position that his cell phone could not be searched incident to his arrest. In Park, police officers arrested several individuals and transported them to the police station. Id. at *2. When the defendants were booked, the officers took their personal property, including cellular telephones. Id. The officers

5

AO 72A
(Rev.8/82)

later searched the telephones without a warrant. Id. at *2-3. The court found that the search of the cellular telephones was unconstitutional, and expressed concern that the justifications of officer safety and preservation of evidence were not present. The court noted that cell phones store "immense amounts of private information." Id. at *8-12.

There is no Eleventh Circuit authority directly on point.[3] The holding in Park is the minority position among cases that have considered whether cell phones may be searched incident to a lawful arrest but without a search warrant. The majority of cases, however, "trend heavily in favor of finding that the search incident to arrest or exigent circumstances exceptions apply to searches of the contents of cell phones." United States v. Wurie, 612 F. Supp. 2d 104, 109-10 & n.9 (D. Mass. 2009)(collecting cases); see also United States v. Deans, 549 F. Supp. 2d 1085, 1094 (D. Minn. 2008) (agreeing with the Fifth Circuit that "if a cell phone is lawfully seized, officers may also search any data electronically stored in the device."). I will follow the majority of cases (and,

---

[3] However, as noted by the district court in United States v. Wurie, 612 F. Supp. 2d 104, 109 (D. Mass. 2009), this circuit has approved, as a search incident to arrest, agents activating a pager taken from a defendant's vehicle at his arrest (by inserting batteries) which the agents then called to determine if it would beep (using a number previously provided by the defendant during the undercover operation). Id. (citing United States v. Diaz-Lizaraza, 981 F.2d 1216, 1222-23 (11th Cir. 1993)(other citations omitted)).

in my opinion, the more persuasive authority) which hold that a warrantless search of a cellular telephone is properly executed as a search incident to arrest. See United States v. Finley, 477 F.3d 250, 259-60 (5th Cir. 2007)(noting that "[t]he permissible scope of a search incident to a lawful arrest extends to containers found on the arrestee's person," and declining to suppress text messages and call records obtained during a warrantless search of a cell phone incident to a lawful arrest); United States v. Young, 278 F. App'x 242, 245 (4th Cir. 2008)(upholding the accessing and copying of text messages from a phone during a search incident to an arrest "based upon ... the manifest need of the officers to preserve evidence...."); United States v. Zamora, No. 1:05 CR 250 WSD, 2006 WL 418390, at *4 (N.D. Ga. Feb. 21, 2006)(concluding that the "legitimate concerns" of losing the data from the cell phones created "exigent circumstances [which] authorized the seizure of the cell phones and the search of their electronic contents.").

Here, Officer Manning's testimony provided a sufficient basis for this court to conclude that there was a risk that the phone could be remotely locked, or that the data on the phone could be remotely deleted, thus implicating the need to preserve evidence. Cf. United States v. Wall, No. 08-60016-CR, 2008 WL 5381412, at *3-4 (S.D. Fla. Dec. 22, 2008)(suppressing cell phone evidence in part because government failed to

7

establish that text messages at issue would have been destroyed absent agent's intervention). Also, the search of Defendant's cell phone was sufficiently contemporaneous to Defendant's arrest to be considered incident to his arrest. See Finley, 477 F.3d at 260 n.7 (finding that although police had moved the defendant, the search was "still substantially contemporaneous with his arrest and ... therefore permissible"). Officer Manning searched the cell phone at his earliest reasonable opportunity after arresting Defendant and taking him to the jail.

For these reasons, the evidence obtained from Defendant's cell phone should not be suppressed.

## B. **Defendant consented to the examination of his cell phone that resulted in the officer viewing the incriminating photographs**

Even if Officer Manning's renewed search of Defendant's cell phone after he had taken Defendant to the jail was unconstitutional, the evidence of the photographs that Officer Manning saw should not be suppressed because he first saw those photographs while searching the phone at Defendant's request.

As set forth above, Defendant asked Officer Manning to look for a number in his cell phone and Officer Manning complied with his request. Therefore, Defendant consented to Officer Manning looking through his phone for the number. Defendant argues that Officer Manning exceeded the scope of Defendant's consent because he

8

went further than a mere search for a particular telephone number on Defendant's list of contacts on his cell phone. The scope of a consent search is limited by the scope of permission given. United States v. Milian-Rodriguez, 759 F.2d 1558, 1563 (11th Cir. 1985)(stating that "[a] suspect's consent can impose limits on the scope of a search in the same way as do the specifications of a warrant [citation omitted]. Moreover, the government may not use consent to a search which was initially described as narrow as license to conduct a general search").

While Defendant's consent was limited in scope, I credit Officer Manning's testimony that the photographs came into view when Officer Manning was searching for the requested telephone number. A plain view seizure is lawful if: (1) the officer lawfully was in a position to view the item; and (2) the incriminating nature of the item was immediately apparent. Horton v. California, 496 U.S. 128, 136-37 (1990). The viewing of the photographs falls within the plain view doctrine and should not result in suppression of the photographs.

### III.  CONCLUSION

In sum, I **RECOMMEND** that Defendant's Motion to Suppress [Doc. 45] be **DENIED**. Defendant's Preliminary Motion to Suppress Title III Recorded Phone Conversations [Doc. 44] is deemed **WITHDRAWN**.

AO 72A
(Rev.8/82)

I will certify this case for trial in a separate order.

It is so **ORDERED** and **RECOMMENDED**, this 15th day of November, 2010.

_____
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE